```
 1         IN THE CIRCUIT COURT OF THE 18TH JUDICIAL CIRCUIT
                      DU PAGE COUNTY, ILLINOIS
 2

 3
       THE VILLAGE OF LISLE,      )
 4                                )
                                  )
 5         Plaintiff,             )
                                  )
 6              -vs-              )    No.  21 DT 872
                                  )             Ruling
 7     ALEX FRENCH,               )
                                  )
 8         Defendant.             )

 9

10

11               REPORT OF PROCEEDINGS had at the

12     hearing of the above-entitled cause, before the

13     HONORABLE MICHAEL W. FLEMING, Judge of said Court, on

14     the 18th day of June, 2021.

15     PRESENT:

16
           THE VILLAGE OF LISLE, by
17         MS. MICHELLE NORTON,
               Village Prosecutor,
18
               appeared on behalf of The Village of Lisle,
19             Plaintiff;

20         RAMSELL & ASSOCIATES, LLC, by
           MR. JASON KUNOWSKI,
21
               appeared on behalf of Alex French,
22             Defendant.

23
       Jillian Doctor, CSR, RPR
24     Official Court Reporter
       CSR 084-004809
```

*Jillian Doctor, CSR #084-004809*

1   THE CLERK: Alex French.

2   MS. NORTON: Good morning, Your Honor. Michelle
3   Norton, N O R T O N, on behalf of the Village.

4   THE COURT: Good morning.

5   MR. KUNOWSKI: Good morning, Judge. Jason
6   Kunowski, K U N O W S K I, on behalf of Alex French.

7   THE COURT: Okay. I apologize for Wednesday. I
8   understand that you weren't here either, so.

9   MS. NORTON: Oh.

10  THE COURT: But I, not unlike Mr. French, I had
11  some car difficulties.

12  MS. NORTON: Hopefully you didn't run out of gas.

13  THE COURT: No, I did not.

14         All right. This comes on for ruling. I have
15  considered the testimony of Officer Wise. I've read
16  all the case law that's been provided to me. And
17  unlike Officer Wise, I had the opportunity to look at
18  this analytically. And the video, I've reviewed the
19  video twice, and the facts are pretty straightforward.
20  There is a disabled vehicle on the roadway without its
21  hazard lights on. And, presumably, Mr. French had run
22  out of gas. He had gone on his own to get gas, and was
23  attempting to fuel his car. There is no vehicle in
24  motion, however, I do think the lack of presence of

1  mind to know that your fuel is low, and also the lack
2  of putting your hazards on, I think, is, per se,
3  negligent and also indicia of possible impairment.
4        There is no issue regarding whether or not he
5  was going to get a citation for improper parking on the
6  roadway, that was never discussed by Officer Wise.  And
7  unlike the typical traffic situation where there is a
8  basis for a stop, a seizure, and then some indicia of
9  impairment, this is a community caretaking situation.
10        And the case that the Prosecution gave me,
11  People versus McDonough, which is at 239 Ill.2d 260, a
12  Supreme Court of Illinois case, dealt with a similar
13  situation where a trooper came upon a vehicle, parked
14  on the side of the road without any lighting, and
15  activated its lights for purposes of safety, not for
16  purposes of initiating a traffic stop.  That was
17  considered a seizure, but also considered an exception
18  to the 4th Amendment because it was a community
19  caretaking situation.  So the fact that the lights are
20  on, and Officer Wise did have his lights activated,
21  does not allow for the defendant's petition to be
22  granted in that regard.  There was an argument made
23  regarding him taking his driver's license, and that,
24  per se, is a seizure.  That's one of the factors to

*Jillian Doctor, CSR #084-004809*

1 look at.
2 In the course of the eight and a half minutes
3 prior to initiating the field sobriety test, there was
4 conversation between the defendant and the officer,
5 which I would characterize as friendly banter regarding
6 his situation. And in spite of the fact that he -- the
7 officer had his license, it's clear to me that
8 Mr. French thought he was not being detained because
9 he was allowed to get into his car twice to attempt to
10 start the vehicle with no luck. But I think he, in his
11 mind, thought as soon as he got his car activated, that
12 he would be able to get his license and proceed on.
13 The two things that I indicate that may be a
14 basis for impairment and give reason for the officer to
15 further investigate are then mitigated by the,
16 approximately, at least seven and a half minutes or
17 eight and a half minutes of interaction with
18 Mr. French. He acts -- on the video -- there is
19 something -- there is no audio, but there is some
20 conversation because he's interacting with the officer,
21 and he puts his hands up at some point. And the
22 officer tells him you don't have to put your hands up.
23 I can see your hands, you know, relax.
24 When he gets the driver's license, he finds

*Jillian Doctor, CSR #084-004809*

1  out that he's got a Concealed Carry.  So I don't know
2  what the training is when you have a Concealed Carry,
3  but I assume if you know you have a gun in the car, you
4  want the officer to be able to see your hands.  And the
5  officer articulates, you know, he's jittery, there is
6  something going on here; however, in the entire time
7  he's with him, there is no objective facts regarding
8  impairment.  He's not stumbling.  He's not staggering.
9  There is no slurred speech.  There is weird, I guess,
10 conversations.  There is a couple of sentences where
11 the defendant breaks off mid-sentence, but there was no
12 testimony that that is an indication of impairment.
13 And the friendly banter was, I think, kind of as a
14 result of the defendant being nervous.  He gets in and
15 out of the car, and he's flicking his hands, which
16 indicates to me that he spilled gas on his hands.  But
17 when he's putting the gas nozzle into the tank area,
18 there is no problem with him coordinating that effort,
19 it's something malfunctioning with the gas can that's
20 allowing the gas to spill over.
21         And his speech, while there is -- it's --
22 there is some broken speech, it's not slurred, it's not
23 mumbled.  He has interaction with the officer in giving
24 him his license.  He's in close proximity, and the

*Jillian Doctor, CSR #084-004809*

1   officer testified very candidly that at that point he
2   could not detect the odor of alcohol.  I think it was
3   as a result of the fact that there was a lot of gas on
4   the defendant's hands.
5            When he's asked for his license, he reaches
6   into his breast pocket, and his wallet is not there.
7   He finds his wallet in his jacket pocket, and then is
8   able to retrieve his license and insurance without any
9   difficulty.  I think Officer Wise summed it up prior to
10  doing the field sobriety test where he says the
11  circumstances are real weird, and that's a fact.  Once
12  he starts with the -- He then says I'm not going to
13  call you a liar, I just need to check you out further,
14  and that's when he initiates the Horizontal Gaze
15  Nystagmus test.  He then is positioned in a different
16  location where he then detects the odor of alcohol.  So
17  I don't know what the wind direction was, but at that
18  point he detects the strong odor of alcohol.
19           Prior to that, there is no objective facts
20  regarding impairment.  He says there is something going
21  on here.  The circumstances are real weird, but that
22  doesn't add up to impairment.  The suggestion was made
23  that maybe the defendant's a functioning alcoholic, and
24  that could be true, but, similarly, if somebody failed

*Jillian Doctor, CSR #084-004809*

1  the field sobriety test and was an undiagnosed person
2  with MS or some other malaise, you wouldn't infer that
3  unless you knew those facts, so that could be something
4  that's going on here, but we don't know that.
5          So based upon all the facts and
6  circumstances, I find that there was a valid seizure by
7  the officer.  He spent at least seven and a half
8  minutes with the defendant, there was no objective
9  facts for the officer to then have him submit to the
10 field sobriety testing.  I feel at that point, the
11 seizure went to a different level.  That's without any
12 objective reasonable basis.  I.
13         Think I do want to comment on the Officer's
14 testimony.  I think it was extremely credible.  I think
15 he was extremely patient with the defendant.  And I
16 will say, anecdotally, that after the point in time
17 that he initiates the field sobriety testing, it went
18 way downhill for the defendant very quickly.  But for
19 all the reasons I've stated, I'm going to grant the
20 petition to rescind, and that will be the order.  I'm
21 going to put the video that I watched back with the
22 file with the clerk.
23      MS. NORTON:  Judge, I will note for the record,
24 and I'm not sure what direction Mr. Ramsell's office

*Jillian Doctor, CSR #084-004809*

1  wants to go with this, but we did tender a lab report.
2  There was a search warrant that was obtained in this
3  case, and the lab has been tendered, so.  I just want
4  that on the record.
5      THE COURT:  Okay.  So and you acknowledge receipt
6  of the lab report?
7      MR. KUNOWSKI:  Your Honor, I do.  If I may have
8  one minute, and I will come back about a future date.
9      MS. NORTON:  I have to go next door.  So I just
10 assume give it a date right now, and if we need to
11 change that date, we can do that.
12     THE COURT:  Yeah.  Let's give it a longer date.
13     MR. KUNOWSKI:  Well --
14     THE COURT:  On a Wednesday.
15     MR. KUNOWSKI:  -- Your Honor, if that's the case,
16 I'd ask leave to file a motion to quash arrest and
17 suppress evidence within seven days and set it over for
18 hearing.
19     THE COURT:  Sure.  What date?
20     MS. NORTON:  May I be heard, Judge?
21     THE COURT:  Sure.
22     MS. NORTON:  I don't know what your -- Well, I
23 guess you could quash and suppress the -- Whatever.
24 Make whatever motion you want.  If you are going to

1   make a motion on the search warrant, I would ask that
2   it be a motion particular to the search warrant and not
3   just a general motion to quash and suppress evidence
4   because that doesn't get to the search warrant.
5        THE COURT:  Okay.  Well, they can file whatever
6   motion they want, and you can file a motion to strike.
7   I get what's going on, but let's get a date.
8        MS. NORTON:  Well, I don't want to -- I mean, are
9   we setting it for hearing or what are we -- Because I
10  don't want to set it for hearing until we have a
11  motion --
12       THE COURT:  Let's put for status.  Yeah, let's set
13  it for status, and leave's granted to file whatever
14  motions you want, but we will set a status date.  You
15  guys are here enough where I don't think it's going to
16  be too inconvenient.
17       MS. NORTON:  Do you want June 30th or --
18       MR. KUNOWSKI:  Your Honor, could we do June 30th
19  by Zoom if we're not able to just set it for hearing
20  right now?
21       THE COURT:  Sure.  Yeah.  And then I'll sign the
22  order.  I'm going to be in Glendale this afternoon, but
23  I'll look for it in the 4015 que.
24       MS. NORTON:  Actually, I'm sending it to you right

*Jillian Doctor, CSR #084-004809*

1   now, Judge.  It's under your name.  So I don't know how
2   that works.
3           THE COURT:  They are somewhere.
4           MS. NORTON:  It should be coming to you directly,
5   so.
6           THE CLERK:  You should have a tab for orders to
7   sign.
8           MS. NORTON:  And I --
9           THE COURT:  In this courtroom?
10          THE CLERK:  Just a general one for you.  Anything
11  that is sent to you should go there.
12          THE COURT:  All right.
13          MS. NORTON:  And, Judge, I want to be clear on
14  what I'm marking on the order, is it no reasonable
15  grounds for the DUI arrest or -- Is that the basis of
16  your order today?
17          THE COURT:  Yes.
18          MS. NORTON:  Okay.  Thank you.
19          MR. KUNOWSKI:  Thank you, Judge.
20          MS. NORTON:  So that order is submitted, Judge.
21          THE COURT:  All right.  I'll look for it.  50/50
22  chance I find it.
23                  (Which were all of the proceedings had
24                   in the above-entitled matter.)

*Jillian Doctor, CSR #084-004809*

```
1        IN THE CIRCUIT COURT OF THE 18TH JUDICIAL CIRCUIT
2                     DU PAGE COUNTY, ILLINOIS
3
4
5           I, JILLIAN DOCTOR, do hereby certify that the
6      foregoing Report of Proceedings, consisting of Pages 1
7      to 11, inclusive, was reported in shorthand by me, and
8      the said Report of Proceedings is a true, correct and
9      complete transcript of my shorthand notes so taken at
10     the time and place hereinabove set forth.
11
12
13                    [signature]
14     _____
15                    Official Court Reporter
                Eighteenth Judicial Circuit of Illinois
16                         DuPage County
                     C.S.R. License No. 084-004809
17
18
19
20
21
22
23
24
```

*Jillian Doctor, CSR #084-004809*